Dillon, J.
These cases involve both the construction and constitutionality of an ordinance passed by the city of Columbus, in March 1905, being number 21927, the purpose of which is declared to be to license to regulate the use of the streets of the city of Columbus, by requiring that no vehicle shall be used upon the streets of said city unless a license to so use said vehicle has been obtained in accordance with the provision of said ordinance. A punishment is provided for any person who shall violate the same. It is further provided that the city auditor shall charge, as a fee for the license, a sum ranging from fifty cents for each bicycle to the sum o'f $10 for any vehicle drawn by four horses. On push carts and street pianos the license fee is $1 per year; on each vehicle, buggy or other vehicle drawn by one horse the fee is $1.50. For two horse $3.50, etc. The ordinance requires that the number, tag or cheek shall be exhibited upon a conspicuous place upon the harness or vehicle, with lettering of such size as will easily be distinguishable. Further provision is made in the ordinance for requiring automobiles and.other auto cars to carry at night certain lights, among others a white light to show this identification tag. The ordinance further creates a vehicle fund and provides that if there be any money remaining over after the expenses of issuing a license, etc., have been paid, it shall be used for the repair of the streets. No exception is made in behalf of any person.
Case number 51881 is brought by L. L. Pégg and fourteen other farmers living near the city, who haul their produce to the city and come to the city occasionally for the purpose of trade. The claim is made that the ordinance does not apply to non-residents of the city, especially to people of their business.
The other two cases seek to declare the entire ordinance void in all respects and as to all persons. The main contention, and the one which the court feels called upon to discuss chiefly, is the contention of the plaintiffs that the so-called license and money exacted therefor is not in fact, and as a matter of law, a license, but is a tax, and therefore in derogation of the Constitution and inhibition in that regard and void. That a city has no power to *438 raise taxes in this manner is of course well settled, and as said by Ranney, J., in Mays v. Cincinnati, 1 Ohio St., 268, 273—
“The power to tax is one of the highest attributes of sovereignty. It involves the right to take the private property of the citizen without his consent, and without other compensation than the promotion of the public good. *' * * Being a sovereign power, it can only be exercised by the General Assembly, when delegated by the people in the fundamental law; much less can it be exercised by a municipal corporation without a further unequivocal delegation by the legislative body. * * * A license may include a tax or it may not. If the exaction goes no further than to cover the necessary expenses of issuing it, it does not; but if it is made a means of supplying money for the public treasury, we agree with the court in Lucas v. Lottery Comrs., 11 Gill & Johns, 490, 506, that it ‘ is a tax, is too palpable for discussion.’ ”
In two of the cases the parties have made certain agreed statements of facts in the ease, among others, that the amount for clerical services, licenses, blanks, tags and numbers is $3,000 per annum. That there will be received by the city from its own territorial limits between $20,000 and $30,000. Outside the city there are some four thousand farmers and gardeners who trade, and occasionally, more or less often, come to the city with their products or for other purposes. Next, the actual cost and care of the streets amounts to not less than $50,000 per annum. The money required annually for police duty upon the streets and for regulation thereof, and to prevent fast and reckless driving, to prevent blockades, and to protect pedestrians at crossings, is uncertain in amount, but would not exceed $30,000 per year. If any fair proportion of those expenses be admitted, the question arises as to whether or not the city is-limited in regulating a particular business which demands and requires regulation to the mere clerical work of issuing the license, or whether the fee may be large enough to include and cover the expenses of regulation itself. That the city council has express power of the Legislature to regulate the use of its streets is conceded and is specially conferred by it in the code. The city of Columbus has numerous ordinances besides the one in question which relate .solely to the use of the streets, such as the weight of loads to be carried, the *439 width, of tires, the speed of vehicles, automobiles, the charges which certain vehicles may make for hauling or carrying passengers and other preventive measures for the care and safety of pedestrians, and also for the prevention of negligence, blockades, and has specially provided for in this ordinance itself a means of identification of the owners of various vehicles. These regulations are wholesome, and the Supreme Court in the case of Marmet v. State, 45 Ohio St., 63, holds in the first syllabus that—
“The General Assembly has power * * * to regulate occupations by license, and to compel, by imposition of a fine, payment of a reasonable fee, where a special benefit is conferred by the public upon those who follow an occupation, or where the occupation imposes special biirdens on the public, or where it is injurious to, or dangerous to, the public. ’ ’
The court in its decision, at page 75, further says that the ownership of the streets is in the city, and the duty is imposed to keep them open and free from nuisance; that this .involves the expenditure of a large amount of money, and calls for constant vigilance on all the streets, and Tor extensive pavements and re.pairs thereof. If neglected, these pavements wear out and a second burden would be imposed upon the property for their repair, .whether the property owner had used the street or not, and even though he had no direct agency in the destruction or wearing out of the street.
The court notices that thousands of property owners use no vehicle of any kind. Those who do use vehicles are favored ones and the court asks this question, “Why should not these favored ones pay a small sum toward making good that which they wear out ? ’ ’ The court in the same case recognizes that the heavier wagons and loads of course cause the greatest burden and, therefore, should pay the largest fee. It would seem, therefore, that it is proper for this court to consider in view of this case all these things in determining whether or not the ordinance, in view of all the facts, does really impose a tax for general purposes, and is not limited to legitimate expenses incident to the regulation. And for this purpose it is proper for the court, not only to consider the ordinance providing for the license, but to. *440 consider all the purposes for which said license is available. Scarcely a day passes that some one is not injured on the streets and often caused by reason of negligence. Identity is almost impossible without the present system of tagging by number. Scarcely a day passes without reckless and fast driving and running upon the streets. Without identification and consequent punishment, and without this very regulation as to speed, the public at large wordd be greatly harmed and the vice would increase and the public be without adequate protection. The ordinance provides, among other things, that any excess of money shall be devoted to the repair of streets. This very point was raised in Marmet v. State, supra, and on page 68 the court says, in speaking of the act before them:
“The provision in Section 38, that all moneys received from licenses upon vehicles shall be placed to the .credit of the street repairing fund, would seem to refute the claim that the money from this source is raised for general revenue, although it would not necessarily follow, even if it were required to be placed to the credit of the general fund, that, the purpose of the law was exclusively the raising of general revenue, because no impediment exists to placing in one fund moneys intended for different purposes. ”
I feel that this case is controlling upon the court here in view of the great uncertainty as to the exact amount of money which is actually necessary for the proper regulation of the use of our streets. If the item of repair be one, and the Supreme Court in Marmel-v. State. Supra, indicates positively that it is, this would effectually dispose of the contention, because that item of repair alone will amount to more than is received from the license. Just what expense the city is put to for police regulation and for the salaries of its officers and others, is in. some doubt, because their duties involve not only this regulation but other breaches of law besides. Indeed the case of Marmet v. State, supra, it seems to me, disposes of every contention made by the various counsel in this ease as to the unconstitutionality of this ordinance and, as I said on a former hearing of this ordinance, I feel bound to follow that case, and whatever objection counsel may have to the syllabus and dicta of that case must be raised in that court as this court should follow it. *441 It noAV remains to be determined to Atdiom this ordinance applies. Taken literally the language makes no exception and applies to every vehicle Avhieh may be used on the streets. Does the license feature of these regulation ordinances apply to nonresidents of the city? In approaching a question of this kind it is alAvays Avell at the very beginning to ask the simply plain question, AVhat is right, .just and reasonable? It being the intent of the laAV to exercise and dispense justice and equity, the ansAver to such a question will be found close to the law. Thus in ansAver to this question it seems conceded that a person traveling from New York to Indianapolis in a vehicle would not be required to stop at the outskirts of the city, walk to the city hall and obtain a license, then return to propel his vehicle through the city. Likewise the same notion would prevail with regard to the man who drove doAvn from an adjoining county once a year. If this be true it would likewise apply to the man who came to the city twice a year. At AA’hat point can anyone say the line should be drawn? Manifestly at no point. If the person who comes to the city tAvice a year is exempt, it follows that he Avho comes four times a year would likewise be exempt. If one be exempt, all are exempt, and the converse of this proposition is equally true, that if we hold this license to apply to one person residing outside the city, it must apply to all. In deciding upon this branch of the case and which is raised by case number 51881, we must first consider the nature of our political subdivisions, beginning Avith the federal government, thence into states, thence into counties, thence into tOAvnships, and thence into municipalities.
One of the fundamental principles underlying this political structure, and AYhich is recognized because of its sound foundation, is that of free and unlimited intercourse between these various subdivisions. No city shall build a Avail barring out visitors from other cities without cause or reason. If a driver should attempt to travel from Circleville to Delaware, and if each municipality had exercised the same right of requiring a license fee, the one trip would probably amount to confiscation of his vehicle, since he would pass through so many municipalities *442 in. even a short distance. There is no question whatever that all persons, residents and non-residents, must comply with all the regulations with reference to the use of the streets. A non-resident has no more right to use a smaller tire with a heavy load than required of the resident. They are not permitted to prope] their vehicle any faster than the residents. They must comply with all such regulations. The question is, whether or not a municipality must not itself furnish the money to carry out its own police regulation in this regard. The distinguishment therefore lies, not with any unequal application of the various regulations of the use of the street; that must be uniform to all persons alike, residents and non-residents; but the question is, as to the payment of the cost of this regulation. To permit a municipality to exact a license fee from outside owners would not be much different from taxing them to help support the police and other officials of the city.
When we take into consideration that each person has a residence somewhere and is compelled to pay the burdens of regulations of all kinds in his own township or municipality, the justice of a rule which forbids any other municipality or township from compelling him to help pay their burdens -becomes apparent. Moreover it is well settled that in construing all ordinances requiring and exacting licenses they must be reasonable, not unjust, not confiscatory and not prohibitive. The determination of Avhat constitutes reasonableness or unreasonableness lies as a last resort in this court, and it is the court’s function to determine that fact. The power of this court, therefore, to so determine in regard to the application of this ordinance is unquestioned, and it hardly requires the second statement to follow this, that if this ordinance Avas intended to apply to nonresidents of this city, it would be unreasonable, unfair and unjust.
The residents of this city expect to exercise the right and will continue to exercise the right of driving over the roads which are supported by the farmers and to drive over the streets of the adjoining municipalities AAthich are supported by those citizens. If this court should hold to the contrary, the further reason *443 would then appear that the right of all other municipalities to enact the same ordinances would result in a practical prohibition of intercourse and, even as I have before indicated, a confiscation. One day’s travel with an ordinary horse and buggy or automobile would be sufficient to demonstrate this last proposition. I have not any hesitancy, therefore, in saying that, either upon the grounds of public policy, or on the grounds oí the prohibitive character, or on the ground of unreasonableness or unfairness or injustice, this ordinance can not be construed to embrace non-residents of the city of Columbus. Such a construction would make the ordinance absolutely unconstitutional and invalid.
M. E. Thrailldll, for Lewis L. Pegg et al.
Paul Jones, for city of Columbus.
J. A. Gocloiun, for J. F. Linton.
G. 8. Marshall, G. E. Garter and E. L. Weinland, City Solicitors, foi defendants.
In case number 51881, a permanent injunction will be issued in favor of L. L. Pegg and those joined with him as plaintiffs, as prayed.
In the other two cases the finding and judgment of the court will be in favor of the defendants, and those actions dismissed at the costs of plaintiff.
Exceptions will be noted for all parties and the appeal bond for each fixed at $100.